[Civ. No. 5864. Fourth Dist. Oct. 2, 1958.]

THE CITY OF SAN DIEGO, Appellant, v. THOMAS F. BOGGELN et al., Defendants; MARTHA MAY ROGERS, Respondent.

J. F. DuPaul, City Attorney, and Frederick B. Holoboff, Deputy City Attorney, for Appellant.

Luce, Forward, Kunzel & Scripps for Respondent.

MUSSELL, J.—This is a condemnation action, filed June 29, 1954, in which the city of San Diego seeks to acquire for a public park and recreation purposes real property owned by defendant Martha May Rogers, near Mission Bay, and described as Block 12, Electric Line Addition in said city. A jury awarded said defendant the sum of $53,750 for her property and the city appeals from the judgment thereupon entered, claiming that the trial court erred in admitting and excluding evidence and in its refusal to give certain offered instructions.

Prior to 1945 Mission Bay was owned by the state as a part of the state's park lands and in that year the state Legislature granted to the city of San Diego all of the tidelands and submerged lands in and around Mission Bay, upon condition that the property be developed and used for park and recreation purposes. On April 17, 1945, a municipal bond election was held and the city was authorized to issue bonds for the acquisition and construction of municipal improvements for park and recreation purposes in and around Mission Bay. On December 14, 1945, the city filed an action (*City of San Diego* v. *Della Adams*) to acquire certain properties adjacent to Mission Bay for park and recreation purposes. The complaint in this action, Number 130137, listed over 900 separate parcels of property, including the parcel here involved and

owned by the defendant Martha May Rogers. However, this action was dismissed by the city on January 22, 1952. In 1946 the Congress of the United States authorized the improvement of the San Diego River and Mission Bay in accordance with a report of the Chief of Engineers, recommending that the flood control project for the San Diego River, as authorized, be extended to include a multiple-purpose project for flood control of said river and small boat navigation on Mission Bay; that the United States pay for the actual construction of the flood control channel and that local public interests pay for the development of the Mission Bay area and purchase and hold in the public interest the lands between the flood control channel and Mission Bay west of highway U. S. 101.

On January 6, 1948, the city adopted a resolution, Number 88026, in which it agreed to fulfill the conditions set forth in said act of Congress in the acquisition and construction of the multiple-purpose project for flood control on the San Diego River and small boat navigation on Mission Bay and to provide at its own expense necessary bulkheading and all necessary lands and rights of way. The city further agreed to make all necessary alterations to highway bridges, utilities and side drainage structures and to purchase and hold in its name for public interest and benefit the lands between the flood control channel and Mission Bay west of Highway U.S. 101. The resolution further provided that the city will complete certain improvements in the area and will provide adequate facilities for storage, maintenance and supplying of small craft in Mission Bay and maintain and operate the entire project, except maintenance of jetties and stone revetment constructed by the United States. Bond issues were authorized in 1950 and 1956 and the proceeds therefrom were and are used for the development of the Mission Bay Park project.

While the real property here involved and owned by defendant Martha May Rogers was included in the property sought to be acquired by the city in the action filed against Della Adams et al., *supra*, this action was dismissed before said defendant's property was so acquired and the present action was filed by the city on June 29, 1954.

It is the basic contention of appellant that the property involved was earmarked for condemnation for the Mission Bay Park project in 1945 and that any enhancement in the market value of the subject property which is attributable to either

the anticipated or actual development of the Mission Bay Park project is not compensable to the extent of such enhancement. In support of this contention appellant cites Nichols on Eminent Domain, volume 4, pages 122-126, stating that the general rule is that any enhancement in value which is brought about in anticipation of and by reason of a proposed improvement is to be excluded in determining the market value of such land; that if it is known from the very beginning exactly where the improvement will be located if it is constructed at all, the property that will be required for its use will not participate in the rise or fall in values, and that the enhancement of price to the public improvement, if based on the reasonable expectation that the lands may be held by the private owner with the added advantage of adjacency to the land improved by the public is legitimate; but when this expectation is destroyed by the practical certainty as distinguished from the legal certainty that the lands are not to continue in private ownership adjacent to the public lands, then the reason for allowing such enhancement fails. *United States* v. *Miller*, 317 U.S. 369 [63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55] is cited as holding that where the public project includes the taking of several tracts, but only one is taken in the first instance, the owners of the other tracts, when they are ultimately taken, should not be allowed an increased value resulting from the public improvement.

In *County of Los Angeles* v. *Hoe*, 138 Cal.App.2d 74 (also cited by appellant) the court said, page 78 [291 P.2d 98]:

"It is the law, as stated by appellant, that in arriving at a determination of the market value of land which is the subject of a condemnation action, it is not proper to consider the increase, if any, in the value of such land by reason of the proposed improvement which is to be made on the land by the condemnor. (See *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63, 75 [20 P. 372, 3 L.R.A. 83]; *United States* v. *Miller*, 317 U.S. 369 [63 S.Ct. 276, 87 L.Ed. 336, 345, 147 A.L.R. 55].)"

The respondent takes no exception to the law as stated in the foregoing text and cases but contends that it does not indicate that the trial court erred in its rulings on the introduction of evidence or in its instructions to the jury.

Appellant first argues that the trial court erred in excluding evidence offered by the appellant which would have

tended to show that the subject property was from the beginning of the Mission Bay Park project in 1945 certain to be taken for this purpose. However, respondent stipulated that the subject property was within the boundaries of the park and within the boundaries of the original condemnation case filed in 1945. Appellant offered the witness Schwob for the purpose of showing that the general boundaries of the park as they were initially determined included the subject property and that it was practically certain that the subject property would be taken for the project as early as 1945 and that appellant, through the expenditure of city funds, was responsible for certain of the public improvements. We find no reversible error in the court's ruling sustaining an objection to the admission of this evidence in view of the said stipulation and the following instruction given to the jury:

"You are instructed that it is improper for you to base your award in this case on any increase in value arising from the improvement proposed by the plaintiff, the City of San Diego.

"The condemnation project or improvement as a city park project is not a factor to be considered by the jury in determining the reasonable market value of the subject property."

In this connection appellant argues that the court erred in refusing to give the following instruction:

"You are instructed that if you find that it was practically certain on December 14, 1945, that the subject property would be included in the public project known as Mission Bay Park, then you must exclude in your determination of fair market value, any enhancement in its value which may be due to the development of the park."

Since the court instructed the jury to the effect that it should not consider in fixing its award any increase in value to the subject property arising from the improvement proposed by plaintiff, it was not prejudicial error to refuse this offered instruction.

Error is claimed by appellant in the refusal of the court to instruct the jury as follows:

"In your determination of the fair market value of the subject property, you are instructed that as a matter of law you are not to consider as compensable any enhancement of its value which may be attributable to the development of the public improvement for which the land is sought to be acquired, in this case, Mission Bay Park, including the construction of the San Diego River Flood Control Channel."

In this instruction the appellant included reference to the

San Diego River Flood control channel and asked the court to instruct the jury that as a matter of law the flood control channel was an integral part of the park project and itself such an improvement that any benefit accruing therefrom to the subject property must necessarily and as a matter of law be excluded by the jury in the computation of fair market value. The question of whether the flood control channel was an integral part of the city's Mission Bay project was a question of fact for the jury. The record shows that the construction of the flood control channel was a federal undertaking to stabilize the flow of the San Diego River, resulting in benefits to lands within the potential flood area of the river, including lands within the Mission Bay project of the city. Under these circumstances it was not error to refuse the last offered instruction.

Appellant argues that the trial court erred in refusing to strike the testimony of the defendant's witness, Stallard, as to the market value of the subject property. Stallard, who was a realtor and well qualified appraiser, testified that the fair market value of the subject property, at the time of trial, was the sum of $57,500; that in fixing the value which he placed upon the property he did not take into consideration the effect of the development of the Mission Bay project and that the price which he assigned to the subject property as a market price was aside from and divorced from any enhancement by virtue of the surrounding park; that the value which he fixed was based entirely upon the assumption that the subject property was available to be developed to a motel use and there existed a demand for that use in the vicinity of the property; that it would be a successful operation if carried through to completion and had nothing to do with the influence of the bay as it was to be developed. He testified that in 1955 there was an offer made for the subject property in the sum of $50,000; that an escrow was opened to consummate this transaction but the sale was precluded by court action. Stallard also testified that in fixing the fair market value he considered other sales transactions and appellant argues that in these sales there was some increment of value which was attributable solely to the fact that the properties were situate proximate to the Mission Bay project; that this fact rendered the evidence of such other sales inadmissible. However, the motion to strike was based upon the claim that Stallard's valuation was as to a partial extent at least based

upon taking into consideration an increment in value attributable to the Mission Bay park development. As heretofore stated, the court instructed the jury that it was improper to base an award on any increase in value arising from the improvement proposed by plaintiff, and in view of Stallard's testimony that he did not base his value on such enhancement, we find no error in the refusal to strike his testimony.

Appellant further contends that the court erred in refusing to permit appellant to introduce evidence of comparable sales in the 1940-1945 era which would tend to show what the current fair market value of the subject property would be exclusive of the increment in value attributable to the public improvement for which the property is being taken.

In *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 678 [312 P.2d 680], it is held that evidence of prices paid on other sales of real property in condemnation proceedings is admissible under the following safeguards: "The sales of the other tracts must have been sufficiently near in time, and the other land must be located sufficiently near the land to be valued, and must be sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. Manifestly the trial judge in applying so vague a standard must be granted wide discretion."

We cannot here hold as a matter of law that there was an abuse of discretion in the trial court's ruling in this connection.

Appellant contends that the court erred in refusing to give the following instruction:

"You are instructed to disregard evidence tending to prove the prices actually paid on sales of property similar to that included in the public improvement for which the subject property is sought to be taken, in this case, Mission Bay Park, and so situated as to adjoin it or to be within its immediate vicinity, when such sales have taken place since the City of San Diego first fixed the boundaries of Mission Bay park and certain lands, including the subject property, for this particular public improvement."

This instruction is objectionable in that it does not state the rule set forth in *County of Los Angeles* v. *Faus, supra,* as to other sales and excludes the consideration of other sales

which took place since the city of San Diego first fixed the boundaries of the park for public improvement.

Judgment affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

A petition for a rehearing was denied October 27, 1958, and appellant's petition for a hearing by the Supreme Court was denied November 26, 1958.

*Assigned by Chairman of Judicial Council.